IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

In Re:                                    )
                                          )
CHARITY DIANNE CASWELL,                   )   Case No. 22-41439-can13
                                          )
        Debtor.                           )

**MEMORANDUM OPINION AND ORDER OVERRULING DEBTOR'S OBJECTION TO THE NOTICE OF POST-PETITION MORTGAGE FEES, EXPENSES, AND CHARGES OF PENNYMAC LOAN SERVICES, LLC**

Nearly four-and-a-half years ago, this court[1] considered whether certain attorney fees incurred in connection with the representation of a mortgage creditor in a chapter 13 case were reasonable under 11 U.S.C. § 506(b). In *In re Okafor*,[2] the court reduced the creditor's requested attorney fees from $900 to $600, reasoning that one hour of attorney time for review of the debtors' chapter 13 plan and one hour for preparing and filing the proof of claim – at an hourly rate of $300 – was reasonable. The court is now asked to consider whether certain attorney fees incurred in connection with the representation of a mortgage creditor in a chapter 13 bankruptcy case filed in 2022 should still be limited to *Okafor's* suggested $600. After hearing the evidence presented in this case, and under the circumstances of this case, the court says no.[3]

*Findings of Fact*

In addition to making findings of fact based on the exhibits and testimony presented, the court takes judicial notice of the procedural background.

---

[1] The Hon. Dennis R. Dow.
[2] 595 B.R. 903 (Bankr. W.D. Mo. 2018).
[3] As was also true in *Okafor*, the parties in this case do not dispute that this is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1). *Okafor*, 595 B.R. at 905.

1

Ms. Caswell filed a chapter 13 petition on November 17, 2022. She is represented by attorney Steven M. Long of Sader Law Firm LLC, a Kansas City law firm. In connection with the chapter 13 case, Mr. Long and his firm are charging Ms. Caswell by the hour.[4]

Ms. Caswell, a below-median debtor, owns a home in Buckner, Missouri, worth $114,000, secured by a first deed of trust in favor of PennyMac Loan Services, LLC, and a second in favor of the Department of Housing and Urban Development.[5] She claimed the property as her exempt homestead.[6] Her first chapter 13 plan proposed that she would keep her home; maintain the ongoing monthly mortgage payment to PennyMac of $962.07; pay that amount through the plan; and cure the estimated prepetition arrears of $1,945.65 at 0% interest.[7]

A month later, attorney Pamela Putnam of the Kansas City office of Armstrong Teasdale LLP entered an appearance and request for notice on behalf of PennyMac.[8] In the meantime, the chapter 13 trustee moved to deny confirmation of the plan on the grounds that the plan was running more than the maximum of 60 months and that there were unfiled tax returns.[9] Although the tax return issues were resolved, the plan length issue has not been resolved. As of the date of this opinion, Ms. Caswell has filed an amended plan; the chapter 13 trustee has continued to raise confirmation issues; and the court is scheduled to hear the confirmation issues in early June. PennyMac has not objected to any of the proposed plans.

PennyMac, through its attorney, Ms. Putnam, timely filed a secured proof of claim on January 4, 2023, reflecting the principal balance due as of the petition date of $110,421 and a

---

[4] ECF No. 49.
[5] Schedules A/B and D, ECF No. 1, pp. 10, 17-18.
[6] ECF No. 1, p. 15.
[7] ECF No. 6. *See also* 11 U.S.C. § 1322(b)(5) (authorizing a debtor to cure mortgage arrears and maintain payments); W.D. Mo. L.R. 3094-1.A[1] (requiring debtors with mortgage arrears as of the petition date to pay the arrears and ongoing payments through the plan).
[8] ECF No. 16.
[9] ECF No. 17.

prepetition arrears of $1,675.57.[10] Attached to the claim was a completed one-page Mortgage Proof of Claim Attachment on Official Form 410A plus 26 pages of loan documents redacted to remove personal information, consisting of the note; two allonges; the recorded deed of trust; and an escrow disclosure statement.

On March 6, 2023, PennyMac filed its "Notice of Post-Petition Mortgage Fees, Expenses, and Charges" on Official Form 410S2.[11] The Notice sought $1,300 in total fees itemized as follows:

Attorney Fees:

- $400 for plan review on December 6, 2022
- $100 for fee notice on March 6, 2023

Bankruptcy/Proof of claim fees:

- $550 for the proof of claim January 4, 2023
- $250 for the pay history for the proof of claim on January 4, 2003

The next day, Ms. Caswell objected to the fees. She alleged that the fees exceeded the "standard" of $600 set by *Okafor*; that the proof of claim had included an "incredibly brief" payment history; that the creditor had not justified why the fees should exceed the *Okafor* standard; that it should be "swiftly evident" that PennyMac was adequately protected; and that, to the extent *Okafor* set an average standard of fees, the fees in this case should actually be less than what *Okafor* allowed. Ms. Caswell requested that the fees be limited to $600 and that the matter be set for hearing.

PennyMac filed a response.[12] PennyMac argued that *Okafor* had been issued four years earlier and did not state that the court intended to "cap" secured creditors' attorney fees. PennyMac

---

[10] Proof of Claim 9-1.
[11] ECF No. 40.
[12] ECF No. 45.

pointed out that debtors' attorneys "no look" fees for representing chapter 13 debtors had increased by $500 since *Okafor* was issued, and that PennyMac's attorney fee rate had increased as well, to $400/hour. PennyMac also contended that the facts of *Okafor* were distinguishable.

Additional findings of fact will be discussed below.

## *Discussion*

This court incorporates the well-reasoned explanation in *Okafor* regarding under what circumstances a secured creditor in a chapter 13 case is entitled to reasonable attorney fees under § 506(b) (and, by implication, § 1322(e)) and need not elaborate all the details here. But, in sum, creditors who are oversecured under § 506(b) – or whose claims are being cured and maintained, regardless of whether oversecured or not under § 1322(e)) – are entitled to attorney fees when two elements are met: (1) attorneys fees are provided for in the loan documents; and (2) the attorney fees and other charges and expenses are reasonably necessary to protect the creditor's interest in connection with the bankruptcy case.[13]

In this case, neither party disputes that ¶ 13 of PennyMac's deed of trust grants PennyMac the right to attorney fees, and that PennyMac has that right, notwithstanding that it may be undersecured, based on § 1322(e).[14] Therefore, the court must determine whether the requested fees are reasonable and necessary to protect PennyMac's interest.

In *Okafor*, the mortgage creditor was oversecured, but the debtors were not in default of their mortgage as of the date of filing and had proposed direct payment of their mortgage. Neither party presented evidence, and the court – as a deemed expert in the reasonableness of attorney

---

[13] *Okafor*, 595 B.R. at 909.
[14] Section 1322(e) states: "Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying loan agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e).

4

fees[15] – appropriately determined that two hours of a creditor's attorney time to review the chapter 13 plan and file a proof of claim in that case was reasonable. In the absence of other evidence, the *Okafor* court considered $300/hour a reasonable rate, given that was what the debtor's attorney said she charged. This case, however, is different.

First, it is undeniable that attorney fees have increased for many attorneys since *Okafor* was decided. The *Okafor* decision was issued in December 2018. But the *Okafor* case was filed in June 2017 and the secured creditor's attorney fees were incurred in October 2017, so actually closer to almost six years ago. By comparison, in December 2016, this court increased its "no look" fees for chapter 13 debtors' attorneys in below-median cases from $3,000 to $3,600. The court increased those fees again to $4,100 in June 2022 – in essence, a $1,100 increase over a similar time frame.[16]

Second, the evidence in this case was undisputed that Ms. Putnam's regular hourly rate also increased from $375 in 2022 to $400 in 2023. Counsel for Ms. Caswell conceded in oral argument that Ms. Putnam's $400 hourly rate was reasonable. By contrast, the secured creditor in *Okafor* did not present any evidence in support of its counsel's hourly rate or time spent.

Third, the attorney for the secured creditor in *Okafor* charged a flat fee for his services. A court may, in the absence of other evidence, rely on a reasonable hourly rate multiplied by a reasonable time spent (the so-called "lodestar standard") as a benchmark to determine the

---

[15] *See, e.g., In re Shahidulla*, 465 B.R. 511, 517 (Bankr. D. Minn. 2012) (citing *First Deposit Nat'l Bank v. Cameron (In re Cameron)*, 219 B.R. 531, 542 (Bankr. W.D. Mo. 1998) (in determining the reasonableness of attorney's fees in a § 523(d) context, "[t]he court can act as its own expert regarding the reasonableness of attorney fees.") (internal citation omitted); *Bankruptcy Law Manual* § 4:38).

[16] This court recently issued an oral ruling finding that, for consumer debtor attorneys, the following hourly rates were reasonable: $300/hour for partners; $200 to $250/hour for associates or junior attorneys, based on experience and efficiency; and $100 to $150/hour for paralegals and assistants. *In re Marsh*, Case No. 18-42471-BTF, ECF Nos., 127, 128) (Bankr. W.D. Mo. Mar. 16, 2023) (Fenimore, C.J.).

5

reasonableness of a flat fee, as the court did in *Okafor*.[17] In this case, however, the evidence was undisputed that Ms. Putnam charged PennyMac flat fees for her services. She and her paralegal were candid in admitting that, in some cases, they spent less time than what the flat fee entitled them to and in some cases, it was more. Ms. Putnam based her flat fees on those that PennyMac authorized under the Fannie Mae guidelines.

Finally, and most importantly, the evidence Ms. Putnam adduced overwhelmingly showed that her flat fees were reasonable and necessary to protect PennyMac's interests, as required by its loan documents, § 506(b), and this court's past decisions as set forth in *Okafor*.

The evidence showed that, with respect to review of Ms. Caswell's plan, billed at the flat fee of $400, that the time spent and the steps taken were much more involved than simply reviewing the plan. Between Ms. Putnam and her paralegal, they reviewed the petition, the docket sheet, and the plan; drafted and filed an entry of appearance and request for notice; reviewed the loan documents in connection with whether to object to the plan; completed a plan review form for the client; and communicated with PennyMac about whether to object to the plan. These services, simply denoted as "plan review," also included providing any order confirming the plan to the client and continuing to monitor the bankruptcy case to protect PennyMac's interests in the event of any modified plans being filed until the case is discharged or dismissed (or up to five years, in the case of a plan running the full 60 months allowed).

In this case, Ms. Caswell has filed two plans and neither have been confirmed, and confirmation issues – including the length of the plan – are still pending. The evidence showed that Ms. Putnam had spent an hour on the "plan review" tasks and the paralegal a half hour, but

---

[17] *See, e.g., In re Rosema*, 641 B.R. 836, 914-15, n. 69 (Bankr. W.D. Mo. 2022) (citing *In re Kolle*, 641 B.R. 621, 629-30 (Bankr. W.D. Mo. 2021) ('[A]s explained in *Kolle*, the Eighth Circuit had previously recognized that the lodestar standard does not apply to flat fees where lawyers don't keep contemporaneous time records.")).

that the task called "plan review" was ongoing, since the plan had not been confirmed. The evidence showed that, generally, Ms. Putnam and her paralegal spent together a total of two hours for "plan review" tasks, but that, if the time was billed hourly, the fees would exceed the flat fee of $400, given Ms. Putnam's hourly rate of $400 and her paralegal's of $175.

The court has no hesitancy based on the paralegal's credible testimony in finding and concluding that, based on the evidence, a flat fee of $400 for "plan review" is reasonable under the circumstances of this case.

The same is true of the flat fees of $550 for the proof of claim, $250 for completion of the Form 410, and $100 for filing the fee notice itself. *Okafor* had rejected the notion that preparing the proof of claim was simply a ministerial act for which no legal services were required, citing cases proving that preparing a proof of claim incorrectly could have serious and far-reaching implications.[18]

Again, the evidence showed that Ms. Putnam and her paralegal performed many necessary services and spent significant time in performing these services. In preparing a proof of claim, the services included reviewing the loan documents to ensure that Ms. Caswell was the borrower in the loan documents or otherwise "tied to the property"; verifying that PennyMac was the holder of the note and deed of trust and that the deed of trust was properly recorded and thus perfected; reviewing the loan documents to see if the note had matured or had been modified; redacting all loan documents of personally identifiable information, in addition to verifying the loan balance and arrears and any escrow amounts due and drafting and filing the proof of claim.

Although there appears to be some overlap in reviewing loan documents for the "plan review" and for the "proof of claim" tasks, the evidence showed that PennyMac assigns each as a

---

[18] *Okafor*, 595 B.R. at 910 (citations omitted).

separate task to Ms. Putnam and that separate steps are required for each task. The court is satisfied that any overlap is minimal and, that Ms. Putnam's review is a distinct and separate task from the review performed by her paralegal, at her paralegal's much lower hourly rate. The $550 flat fee Ms. Putnam charged was also consistent with Fannie Mae guidelines. And, the evidence showed the paralegal had spent two hours in connection with preparing the proof of claim for Ms. Caswell's case and Ms. Putnam had spent a half hour – which would equate to $550 if billed by the hour.

In connection with the pay history, Ms. Putnam's paralegal testified that she reviews the financial information provided by the client to create the pay history and that she, not Ms. Putnam, drafts the fee history. She testified that she spent 45 minutes to an hour on preparing the pay history in Ms. Caswell's case, less than the two hours on average she spends on pay histories in most case. Again, however, the fee Ms. Putnam charged of $250 was a flat fee and consistent with Fannie Mae guidelines. The $100 fee Ms. Putnam charged for preparing the fee notice itself was less than what Fannie Mae would allow. The court finds and concludes that both fees are reasonable and were necessary to protect PennyMac's interest in the case.

Ms. Caswell argues that her case is an uncomplicated one with a one-page pay history, and that, under *Okafor*, the burden should be on PennyMac to show that the case is extraordinary to justify an upward departure from the $600 "standard" set in that case. In closing argument, Ms. Caswell's counsel urged the court to limit the fees to two hours of work at $400 per hour, or $800.

The court agrees that the burden is PennyMac's. But the court believes PennyMac has met its burden. *Okafor* was decided in the absence of evidence and intended as a guideline in the absence of such; PennyMac's evidence of time spent by its attorney and paralegal was undisputed and the evidence otherwise showed that the flat fees were reasonable and necessary to protect

PennyMac's interest. *Okafor* did not involve a mortgage in default; it is undisputed that Ms. Caswell was in arrears with PennyMac on the date of filing, necessitating PennyMac to complete the Form 410 pay history not required in *Okafor*. Ms. Caswell's argument that the case is simple and should not necessitate $1,300 of fees is belied by the fact that the plan is not confirmed and that her counsel has incurred almost $6,500 in fees (or 150% of the no-look fees for below median chapter 13 cases) in the first four months of the case, through March 31.[19]

As PennyMac argued, this court in *Okafor* did not intend that *Okafor* be wielded as a cap on secured creditor's fees in perpetuity. Rather, *Okafor* was a guideline in the absence of evidence; and *Okafor* has served as a useful and helpful guideline for many years. This court does not repudiate *Okafor* as a guideline. But, based on the undisputed evidence in this case, PennyMac has met its burden of proving the *Okafor* guideline should not apply in this case.

The Objection to PennyMac's Notice of Post-petition Mortgage Fees, Expenses and Charges is OVERRULED and PennyMac is allowed fees of $1,300.

IT IS SO ORDERED.

Dated this May 30, 2023.

/s/ Cynthia A. Norton
United States Bankruptcy Judge

---

[19] *See Objection to Interim Application for Compensation of Sader Law Firm filed by United States Trustee* (ECF No. 71).